**FEE PAID**

Heidi Rummel, Esq.
CA Bar No. 183331
699 Exposition Blvd
Los Angeles, CA 90089
Telephone: (213) 740-2865
Facsimile: (213) 740-5502
hrummel@law.usc.edu

Eric H, Jaso (*pro hac vice* admission pending)
Spiro Harrison & Nelson
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
Telephone: (973) 744-2100
Facsimile: (973) 232-0887
ejaso@shnlegal.com

**FILED**
CLERK, U.S. DISTRICT COURT

6/28/24

CENTRAL DISTRICT OF CALIFORNIA
BY: ___eee_____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *ex rel.* AIDAN FORSYTH, <br><br>             *Plaintiff-Relator,* <br><br> v. <br><br> CONTRACT SERVICES ADMINISTRATION TRUST FUND, <br><br>             *Defendant.* | Civil Action No. _____ <br><br> Hon. _____ <br> **2:24-CV-05489-SB-JPRx** <br> **QUI TAM COMPLAINT** <br><br> **FILED UNDER SEAL PURSUANT TO** <br> **31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendant Contract Services Administration Trust Fund ("Defendant" or "CSA"), and alleges as follows:

## INTRODUCTION

1. This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendant's materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP"), in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").


2. Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan program.

**SUMMARY OF ALLEGATIONS**

3. The Small Business Administration ("SBA") permitted only certain types of entities, not including a non-profit registered under 501(c)(6) of the IRC, to receive PPP loans from applying for PPP loans.

4. David Gross has been the CEO of CSA since October 2019.

5. Jeremy McDowell has been the CFO of CSA since June 2016.

6. CSA is an entity organized under 501(c)(6) of the Internal Revenue Code ("IRC").

7. Only certain types of entities were eligible to receive PPP loans in April 2020.

8. One type of entity not listed among those eligible to receive PPP loans was a non-profit registered under 501(c)(6) of the IRC.

9. In or before April 2020, CSA submitted a Small Business Administration ("SBA") application for a first-draw PPP loan to City National Bank based in Burbank, California.

10. In the application, CSA falsely certified that it was "eligible to receive a loan under the rules in effect at the time this application is submitted."

11. In reliance on this false statement and certification, City National Bank extended a PPP loan to CSA in the approximate amount of $1,971,697.00.

12. In further reliance on CSA's false statement and certification, City National Bank forgave the PPP loan, the reimbursement for which cost the United States $1,990,657.70 (the lender fee for this loan was approximately $59,150.91, or 3%).

13. Relator files this *qui tam* lawsuit to enable the Government to recover from Defendant the SBA-guaranteed and forgiven monies that were provided to Defendant as the result of their wrongdoing, bank fees and costs paid by the Government, as well as to recover treble damages and/or penalties.

**JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS**

14. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

15. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendant pursuant to 31 U.S.C. § 3732(a) because the Defendant transacts business in this District, and because the PPP Loan applications were prepared in, executed in, and/or submitted to lenders in this District.

16. Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein (including submission of the PPP Loan applications) occurred in this District.

17. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on the Defendant until the Court so orders.

18. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable Martin Estrada, United States Attorney for the Central District of California, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

19. Relator is not aware that the allegations in this Complaint have been publicly disclosed. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

**PARTIES**

20. At all times relevant to this action, Plaintiff/Relator Aidan Forsyth resided at 55 West 8th Street, New York, NY 10011.

21. At all times relevant to this action, Defendant Contract Services Administration Trust Fund "administer[ed] a variety of programs for the benefit of the motion picture and television industry," according to its website. Its principal place of business was located at 2710 Winona Avenue, Burbank, CA 91504.

**GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT**

**The False Claims Act**

22. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

23. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $13,946.00 and up to $27,894.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024).

24. The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C.

§ 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

25. The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

26. The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

27. In this action, and under well-established precedent, the false and fraudulent nature of Defendant's conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

28. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan

programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

29. Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

30. Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

31. Only the following organizations were eligible to receive PPP loans under the CARES Act as originally passed:

    a. "small business concerns, [and] any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) ... if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of...(I) 500 employees; or (11) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal concern operates" Pub. L. No. 116-136, § 1102(a)(2)(D)(i);

    b. "individuals who operate under a sole proprietorship or as an independent contractor and eligible self-employed individuals" *Id.* at § 1102(D)(ii); and

    c. "[b]usiness concerns with more than 1 physical location ... that employ[] not more than 500 employees per physical locations of the business concern and that [are]

assigned a North American Industry Classification System code beginning with 72 at the time of disbursal..." *Id.* at § 1102(D)(iii).

32. Importantly, the CARES Act defined a "non-profit organization" as "an organization that is described in section 50l(c)(3) of the Internal Revenue Code of 1986 and that is exempt from taxation under section 501(a) of such Code." *Id.* § 1102(a)(2)(A)(vii).

33. In the SBA's Interim Final Rule dated April 15, 2020, it announced the implementation of the CARES Act and listed the categories of entities that were eligible for PPP loans. The Interim Final Rule stated, "You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:"

    i. You are:

        A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act; or

        B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and

    ii. You were in operation on February 15, 2020 and either had employees for whom you paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC.

    You are also eligible for a PPP loan if you are an individual who operates under a sole proprietorship or as an independent contractor or eligible self-employed individual, and you were in operation on February 15, 2020.

    SBA Interim Final Rule, published April 15, 2020, located at 13 CFR Part 120, available at https://www.federalregister.gov/documents/2020/04/15/2020-07672/business-loan-program-temporary-changes-paycheck-protection-program.

34. The Borrower Application Form available in April of 2020 required applicants to "check" a box listing what type of entity they were. The only available selections were: Sole proprietor, Partnership, C-Corp, S-Corp, LLC, Independent contractor, Eligible self-employed individual, 50l(c)(3) nonprofit, 501(c)(19) veterans organization, Tribal business (sec. 31(b)(2)(C) of Small Business Act), and Other.

35. It was not until on or about March 18, 2021 that the Borrower Application Form listed "Other 501(c) organization" as a type of entity applicants could select.[1]

36. Therefore, the CARES Act, the SBA Interim Final Rules, and the SBA Borrower Application Form each provided that only a list of certain types of entities were eligible to receive PPP loans. A type of entity not listed by the SBA as an entity eligible to receive PPP loans was a non-profit registered under 501(c)(5) of the Internal Revenue Code.

37. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

38. The borrower's authorized representative was required to certify, among other things, the business's average monthly payroll expenses and number of employees. This information was used to calculate the amount of money the business is eligible to be loaned. The applicant also had to submit documentation showing payroll expenses, among other things.

39. The borrower's authorized representative was further required to certify that the business was "eligible to receive a loan under the rules in effect at the time this application [was] submitted that [had] been issued by the Small Business Administration (SBA) implementing the

---

[1] The American Rescue Plan, enacted in March 2021, added 501(c)(5) entities to PPP loan eligibility, but did not make that provision retroactive. *See* Publ. L. No. 117-2, Sec. 5001 (Mar. 11, 2021).

Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)."

40. All versions of the application further required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

41. PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

42. Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

43. A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

**SPECIFIC FRAUD ALLEGATIONS**

**CSA Was Ineligible for PPP Loans**

44. At all times relevant to this action, CSA was ineligible to receive PPP loans because it was a non-profit registered under 501(c)(6) of the IRC.

45. According to their website, CSA "administers a variety of programs for the benefit of the motion picture and television industry." *See* Contract Services, *Contract Services* (last visited May 23, 2024), https://www.csatf.org/.

46. CSA is organized under 26 U.S.C. § 501(c)(6). 501(c)(6) entities may include business leagues, chambers of commerce, real estate boards, boards of trade and professional football leagues.

47. In CSA's 2020 IRS Form 990, the business identified as a 501(c)(6) tax exempt entity.

48. In CSA's 2021 IRS Form 990, the business identified as a 501(c)(6) tax exempt entity.

49. The April 2, 2020, SBA Borrower Application Form, Form 2483, that an authorized representative of CSA completed, did not identify 501(c)(6) organizations as entities eligible to apply for PPP loans.

50. The CARES Act and the SBA Interim Final Rules listed types of entities that were eligible to apply for PPP loans in April 2020 and 501(c)(6) tax-exempt organizations were not on the list.

### CSA Applied for and Received a First-Draw PPP Loan, which was Later Forgiven

51. In or about April 2020, CSA prepared or caused to be prepared an SBA application for a first-draw PPP loan to City National Bank, a federally-insured financial institution based in Burbank, California.

52. The original SBA Form 2483, effective April 2, 2020, required applicants to "check" a box indicating what type of entity they were. The only available selections were: Sole proprietor, Partnership, C-Corp, S-Corp, LLC, Independent contractor, Eligible self-employed individual, 50l(c)(3) nonprofit, 501(c)(19) veterans organization, Tribal business (sec. 31(b)(2)(C) of Small Business Act), and Other.

53. The original SBA Form 2483, effective April 2, 2020, further required the applicant's representative to "certify in good faith . . . that the information provided in this

application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

54. Upon information and belief, an authorized representative of CSA falsely identified CSA—a 501(c)(6) entity—as eligible to receive a PPP loan.

55. Upon information and belief, an authorized representative of CSA falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

56. In or about April 2020, an authorized representative of CSA submitted or caused to be submitted the PPP loan application to City National Bank.

57. On or about April 16, 2020, in reliance on CSA's materially false and fraudulent representations and certifications in the loan application, City National Bank issued PPP Loan # 2322437203 to CSA in the amount of $ 1,990,657.70 (the "7203 Loan").  The lender fee for 7203 Loan was approximately $59,150.91, or 3%.

58. On or about April 19, 2021, the 7203 Loan was forgiven in full, causing the United States to reimburse City National Bank for the full amount plus interest, costs and fees.

### THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANT'S CONDUCT

59. Defendant's materially false statements have caused the Federal Government to be defrauded of taxpayer funds in the approximate amount of $1.9 million.

## CLAIMS FOR RELIEF

## COUNT I

False Claims Act:

Presenting or Causing to be Presented False and Fraudulent Claims

31 U.S.C. § 3729(a)(1)(A)

60. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

61. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendant has knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

## COUNT II

False Claims Act:

Making or Using False

Records or Statement to Cause Claims to be Paid

31 U.S.C. § 3729(a)(1)(B)

62. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

63. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendant have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendant – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendant, ordering that:

A. That Defendant be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

- 12 -

US ex rel. Forsyth v. Contract Services Administration Trust Fund Qui Tam Complaint (UNDER SEAL)
SHN\834244.1

B.     That judgment be entered in Relator's favor and against Defendant in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $13,946.00 and up to $27,894.00 per claim as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

C.     That Defendant be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D.     That judgment be granted for Relator against Defendant for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.     That Relator be granted such other and further relief as the Court deems just and proper.

## **TRIAL BY JURY**

Relator hereby demands a trial by jury as to all issues.

DATE:   June 24, 2024                               Respectfully submitted,

　　　___*/s/ Heidi Rummel*_____
Heidi Rummel, Esq.
CA Bar No. 183331
699 Exposition Blvd.
Los Angeles, CA 90089
Telephone: (213) 740-2865
Facsimile: (213) 740-5502
hrummel@law.usc.edu

Eric H. Jaso (*pro hac vice* admission pending) **SPIRO HARRISON & NELSON**
363 Bloomfield Avenue, Suite 2C Montclair, NJ 07042
Telephone: (973) 744-2100
Facsimile: (973) 232-0887
ejaso@shnlegal.com

*Attorneys for Relator*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. _____ |
| *ex rel.* [UNDER SEAL], | Hon. _____ |
| Plaintiff, | |
| v. | **QUI TAM COMPLAINT** |
| [UNDER SEAL], | **FILED UNDER SEAL UNDER 31 U.S.C. § 3730(b)(2)** |
| Defendants. | **JURY TRIAL DEMANDED** |

**TO BE FILED UNDER SEAL**

**PURSUANT TO 31 U.S.C. § 3730(b)(2)**

SHN\834244.1